DR. VERONICA KING,

        Plaintiff,

  v.                                   Case No.: 26-494

ASCENSION LLC,

        Defendant.

NOW COMES the Plaintiff, Dr. Veronica King, through her undersigned attorneys, and, as and for a Complaint against the Defendant, Ascension LLC, alleges as follows:

## NATURE OF CASE

1.      Plaintiff, Veronica King ("Dr. King") alleges that Defendant, Ascension LLC, ("Ascension") violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*]; Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000 *et. seq.*]; and, the Family and Medical Leave Act of 1993, ("FMLA") [29 U.S.C. § 2601, et. seq.], by discriminating against her based on protected status, and retaliating against her for protected activity.

## JURISDICTION AND VENUE

2.      Jurisdiction over Dr. King's claims under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*], is conferred on this Court by 28 U.S.C. § 1331. Jurisdiction over Dr. King's claims under the Family and Medical Leave Act of 1993 [29 U.S.C. §§ 2601-2654] is conferred on this Court by 29 U.S.C. § 2617(a)(2).

3. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, in that Defendant operates within the Eastern District and the unlawful actions occurred in the Eastern District.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## JURY DEMAND

5. Dr. King demands that her case be tried to a jury of her peers.

## PARTIES

6. Dr. King, is an adult citizen of the United States, residing at 5518 34th Ave., Kenosha, WI 53144.

7. Ascension is a company organized and existing under the laws of the State of Wisconsin that operates healthcare facilities, including one located at 3237 S. 16th Street, Milwaukee, WI 53215.

## OPERATIVE FACTS

8. Dr. King was employed by Ascension from March 7, 2022 to March 4, 2025.

9. Dr. King was employed at Ascension's Colombia St. Mary's location from March 7, 2022 to November 27, 2023, and at the St. Francis Hospital from November 28, 2023 to March 4, 2025.

10. Dr. King was employed as a Licensed Behavioral Health Counselor from March 7, 2022 to November 16, 2022, followed by promotion to the Lead Licensed Behavioral Health Counselor position, where she served until March 4, 2025.

11. Dr. King is an African American female.

2

12. Since October 2, 2013, Dr. King has been disabled by Rheumatoid Arthritis.

13. Ascension was made aware of Dr. King's disability in her employment application and pre-employment physical examination.

14. Dr. King has visible disfigurement in both of her hands.

15. Dr. King applied for intermittent Family Medical Leave Act (FMLA) leave on January 9, 2025, because of her Rheumatoid Arthritis.

16. Dr. King had worked more than 1,250 hours during his twelve months preceding January 9, 2025.

17. Dr. King required intermittent FMLA leave to attend numerous medical appointments, which were only available during her regular working hours.

18. Dr. King's FMLA request was approved by Ascension's FMLA administrator, Sedgwick, on January 30, 2025.

19. Throughout her employment with Ascension, Dr. King had perfect attendance and no unplanned absences.

20. In 2022, 2023, and 2024, Dr. King received excellent performance reviews and received the highest performance raise that an employee could earn.

21. Dr. King fulfilled several roles at Ascension, including notarizing documents throughout the hospital.

22. Throughout her tenure with Ascension – St. Francis, Dr. King received commendations from managers for her work with patients in the hospital.

23. Dr. King volunteered her time to work as a Sitter when the hospital did not have any one to monitor patients in Intensive Care, Mental Health & Addiction Unit, and the Medical/Surgical Units.

3

24. Dr. King was consulted by Ascension's medical doctors on issues involving the homeless and offender populations.

25. Each workday, Dr. King arrived at work approximately 7:15 a.m., logged-in, and printed the Census Sheets and prepared for daily Interdisciplinary Rounds for Inpatient Mental Health/Addiction Unit, and the Intensive Care Unit. Some patients with Mental Health or Substance Use Disorders, were not allowed to be placed on the Inpatient Mental Health/Addiction Unit, and were placed in the Intensive Care Unit, the Emergency Room, or the Medical/Surgical Unit. Dr. King was responsible for meeting with these patients throughout the hospital.

26. During Interdisciplinary Rounds, Dr. King performed Alcohol and Other Drug Abuse ("AODA") Assessments including a diagnostic interview with patients to screen for substance use risks, severity, and needed level of care.

27. To complete the AODA Assessments, Dr. King was required to access patient records for purposes of demographics and Medicaid/Medicare eligibility. Once the AODA application was completed and faxed to IMPACT, Milwaukee County Department of Health & Human Services – Housing Division, Salvation Army, and Meta House; the Case Management Social Worker was notified that the Application was completed, and housing was secured. The Case Management Social Worker completed the Discharge Planning for the Patient.

28. Dr. King participated in Ascension's Employee Tuition Reimbursement Program in 2022, 2023, and 2024, earning a Doctorate in Education (EdD) from Edgewood College on May 11, 2024.

29. Dr. King was the only Black Lead Licensed Behavioral Health Counselor in Ascension's Milwaukee and Racine, Wisconsin facilities.

4

30. Dr. King was the only Licensed Behavioral Health Professional in Ascension's Milwaukee and Racine, Wisconsin facilities to hold three licenses issued by the State of Wisconsin Department of Safety & Professional Services: Independent Clinical Supervisor #15569-135, Clinical Substance Abuse Counselor #15703-132, and Social Worker #5140-120.

31. On September 24, 2024, Dr. King received a commendation from Shana McClone, Chief Nursing Executive for her, "active participation in Interdisciplinary Rounds. . . . I appreciate your desire to offer such an important service to our patients while sharing knowledge with the team. It is noted."

32. On January 22, 2025, Ashley Witt, Manager of Case Management Services, emailed Dr. King, "I received great feedback that our numbers look good for the county for the housing Programs, and I said it is likely all do to you!"

33. On February 12, 2025, Dr. King received a commendation for going, "above and beyond to help find housing, resources, and support for all of your patients. You are also a wealth of AODA information to the Inpatient Case Management Team. We value you and your expertise. You also do everything with a smile."

34. On March 4, 2025, in a meeting with Rory Hosken, Human Resources, Kimberly McCormick ("McCormick"), Outpatient Behavioral Health Manager, and Laurel Osteguard, Behavioral Health Manager of the Inpatient Unit, Ascension terminated Dr. King's employment, falsely claiming that Dr. King had violated HIPPA.

35. When Dr. King asked for specifics of the alleged HIPPA violations, Ascension could provide no proof or examples.

36. When the State of Wisconsin Department of Workforce Development – Unemployment Insurance Division asked for specifics of the alleged HIPPA violations, Ascension could provide no proof or examples.

37. In 2023, Licensed Behavioral Health Counselor, Patrick Schultz ("Schultz"), brought a loaded firearm to work and had it in his desk drawer in the Outpatient Mental Health Clinic at Ascension – Columbia St. Mary's Milwaukee Hospital.

38. Schultz bringing his loaded firearm into Ascension's building directly violated Ascension's employee policy and should have resulted in his termination.

39. Schultz, a white male who, upon information and belief, does not have a disability, was promoted to Lead Licensed Behavioral Health Counselor, and then promoted to Licensed Behavioral Health Supervisor.

40. Schultz worked under the supervision of McCormick, who was the Outpatient Behavioral Health Supervisor, but has since been promoted to the Outpatient Behavioral Health Manager position for the Ascension Healthcare Milwaukee and Racine Markets.

41. McCormick, a white female was openly hostile toward Dr. King.

42. In October 2023, McCormick deducted three days of Paid Time Off (PTO) for the Substance Abuse and Mental Health Conference that Dr. King attended, despite having a written document from Behavioral Health Manager, Jason Gaurkee ("Gaurkee"), which granted Dr. King permission to attend the Conference without having to use PTO.

43. When Dr. King confronted McCormick with the proper documentation, McCormick claimed she was not aware that Gaurkee had granted permission, failed to take responsibility for her error, and only corrected her error when prompted to by Human Resources and Payroll.

6

44. Erin Shannon, a white woman who, upon information and belief, does not have a disability, is a Licensed Behavioral Health Counselor at Ascension – St. Francis Hospital.

45. Shannon routinely called in sick on a weekly basis and used Paid Time Off (PTO) without recording her absences in the KRONOS system, thereby enabling her to recycle and reuse PTO improperly.

46. Dr. King noticed Shannon's violations and reported them to the Behavioral Health Manager at Ascension – St. Francis.

47. Shannon's fraudulent behavior warranted termination under Ascension's company policy, yet no disciplinary action was taken against her.

48. Ascension's company policies are applied in a discriminatory manner, as similarly situated employees who are not African American, disabled or using FMLA, and commit serious work rule violations but are neither disciplined, nor terminated.

49. Ascension's discrimination against Dr. King caused her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**FIRST COUNT**
**AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION**

50. As and for a first Count, Dr. King re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

51. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Ascension routinely targeted and treated Dr. King less favorably than comparably situated, non-disabled employees, which led to the termination of Dr. King's employment, causing her to suffer losses

7

of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

## SECOND COUNT
## AMERICANS WITH DISABILITIES ACT
## RETALIATION

52. As and for a second Count, Dr. King re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

53. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Ascension targeted Dr. King for engaging in protected activity related to her disability, which led to the termination of Dr. King's employment, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

## THIRD COUNT
## TITLE VII, CIVIL RIGHTS ACT OF 1964
## RACE DISCRMINATION

54. As and for a third Count, Dr. King re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

55. The allegations more particularly described above constituted race discrimination against Dr. King, with malice or with reckless indifference to the federally protected rights of Dr. King, in violation of Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, [42 U.S.C. § 2000e-2(a)(1)], causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

8

**FOURTH COUNT**
**FMLA INTERFERENCE § 2615(A)(1)**

56.     As and for a fourth Count, Dr. King re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

57.     Ascension deprived Dr. King of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1) on the basis that she was eligible for the FMLA's protections, Ascension was covered by the FMLA, Dr. King was entitled to leave under the FMLA, she provided sufficient notice of her intent to take FMLA leave, and Ascension denied her FMLA benefits to which she was entitled.

58.     The allegations more particularly described above regarding the intentional discriminatory practices of Ascension, were not made with good faith or reasonable grounds for believing that the conduct did not violate the Family and Medical Leave Act of 1993, [29 U.S.C. § 2601, *et seq.*]

59.     The allegations more particularly described above caused Dr. King wage loss, benefits loss, and expenses, all to her damage.

**FIFTH COUNT**
**FMLA RETALIATION § 2615(a)(2)**

60.     As and for a fifth Count, Dr. King re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

61.     Ascension violated 29 U.S.C. § 2615(a)(2) by taking the materially adverse action of terminating Dr. King's employment because of FMLA-protected activity.

62.     The allegations more particularly described above regarding the intentional discriminatory practices of Ascension were not made with good faith or reasonable grounds for

9

believing that the conduct did not violate the Family Medical Leave Act of 1993 [29 U.S.C. § 2601, *et. seq.*].

63.     The allegations more particularly described above caused Dr. King wage loss, benefits loss, and expenses, all to her damage.

Wherefore Plaintiff, Veronica Dr. King, demands that judgment be entered and Defendant ordered to provide the following remedies:

A.     Damages equal to the amount of wages, employment benefits, and other compensation denied or lost by reason of the FMLA violation pursuant to 29 U.S.C. § 2617;

B.     The interest on said damages calculated at the prevailing rate pursuant to 29 U.S.C. § 2617;

C.     Equitable relief as may be appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. § 2617;

D.     A reasonable attorney's fee pursuant to 29 U.S.C. § 2617;

E.     Reasonable expert witness fees pursuant to 29 U.S.C. § 2617;

F.     Costs of the action pursuant to 29 U.S.C. § 2617;

G.     An additional amount as liquidated damages equal to the sum of damages and interest pursuant to 29 U.S.C. § 2617;

H.     All monetary losses;

I.     Costs, disbursements, prejudgment interest, actual attorney's fees incurred in prosecuting this claim, together with interest on said attorney's fees;

J.      Punitive damages in an amount deemed sufficient by the trier of fact to punish and deter the defendant from engaging in such unlawful conduct now and in the future; and

K.      Such other relief as the Court deems just and equitable.

Dated this 25th day of March, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, Bar Number: 1008953
Nicholas O. Yurk, SBN: 1095278
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI  53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@EmployeeAdvocates.com