**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

DR. VERONICA KING,

Plaintiff,

v. Case No. 2:26-cv-00494-PP

ASCENSION LLC;
JASON GAURKEE;
RORY HOSKEN;
KIMBERLY MCCORMICK;
LAUREL OSTEGUARD,

Defendants.

---

# AMENDED COMPLAINT

---

NOW COMES Plaintiff Dr. Veronica King, through her undersigned attorneys, and, as and for an Amended Complaint against Defendants Ascension LLC, Jason Gaurkee, Rory Hosken, Kimberly McCormick, and Laurel Osteguard, alleges as follows:

## NATURE OF CASE

1. Plaintiff Veronica King ("Dr. King") alleges that Defendant Ascension LLC, ("Ascension") violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq*.]; Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000 *et. seq.*]; and, further alleges that all Defendants violated the Family and Medical Leave Act of 1993, ("FMLA") [29 U.S.C. § 2601, et. seq.], by discriminating against Dr. King based on protected status, and retaliating against her for protected activity.

## JURISDICTION AND VENUE

2. Jurisdiction over Dr. King's ADA claims is conferred on this Court by 28 U.S.C. § 1331. Jurisdiction over Dr. King's claims under the FMLA is conferred on this Court by 29 U.S.C. § 2617(a)(2).

3. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, in that Ascension operates within the Eastern District, the individual Defendants are domiciled in the Eastern District, and the unlawful actions occurred in the Eastern District.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## JURY DEMAND

5. Dr. King demands that her case be tried to a jury of her peers.

## PARTIES

6. Plaintiff Dr. King is an adult domiciled at 5518 34th Ave., Kenosha, WI 53144.

7. Defendant Ascension is a company organized and existing under the laws of the State of Wisconsin that operates healthcare facilities, including one located at 3237 S. 16th Street, Milwaukee, WI 53215.

8. Defendant Jason Gaurkee ("Gaurkee") is an adult domiciled in the State of Wisconsin and at relevant times always had supervisory authority over Dr. King and was responsible in whole or part for the violation of Dr. King's FMLA rights.


Case 2:26-cv-00494-PP Filed 05/08/26 Page 2 of 14 Document 11

9. Defendant Rory Hosken ("Hosken") is an adult domiciled in the State of Wisconsin and at relevant times always had supervisory authority over Dr. King and was responsible in whole or part for the violation of Dr. King's FMLA rights.

10. Defendant Kimberly McCormick ("McCormick") is an adult domiciled in the State of Wisconsin and at relevant times always had supervisory authority over Dr. King and was responsible in whole or part for the violation of Dr. King's FMLA rights.

11. Defendant Laurel Osteguard is an adult domiciled in the State of Wisconsin and at relevant times always had supervisory authority over Dr. King and was responsible in whole or part for the violation of Dr. King's FMLA rights.

## OPERATIVE FACTS

### Dr. King's tenure at Ascension

12. Dr. King was employed by Ascension from March 7, 2022 to March 4, 2025.

13. Dr. King was employed at Ascension's Columbia St. Mary's location from March 7, 2022 to November 27, 2023, and at the St. Francis Hospital from November 28, 2023 to March 4, 2025.

14. Dr. King was employed as a Licensed Behavioral Health Counselor from March 7, 2022 to November 16, 2022, followed by promotion to the Lead Licensed Behavioral Health Counselor position, in which she served until March 4, 2025.

### Dr. King's job duties

15. Each workday, Dr. King arrived at work at approximately 7:15 a.m., logged-in, and printed the Census Sheets and prepared for daily Interdisciplinary Rounds for Inpatient Mental Health/Addiction Unit, and the Intensive Care Unit. Some patients with Mental Health or Substance Use Disorders, were denied placement on the Inpatient Mental Health/Addiction Unit,

and were instead placed in the Intensive Care Unit, the Emergency Room, or the Medical Surgical Unit. Dr. King was responsible for meeting with these patients.

16. During Interdisciplinary Rounds, Dr. King performed Alcohol and Other Drug Abuse ("AODA") Assessments including a diagnostic interview with patients to screen for substance use risks, severity, and needed level of care.

17. To complete the AODA Assessments, Dr. King was required to access patient records for purposes of demographics and Medicaid/Medicare eligibility. Once the AODA application was completed and *faxed* to IMPACT, Milwaukee County Department of Health & Human Services – Housing Division, Salvation Army, and Meta House; King notified the Social Worker that the Application was completed, and housing was secured. The Case Management Social Worker completed the Discharge Planning for the Patient.

18. Dr. King fulfilled several roles at Ascension, including notarizing documents throughout the hospital.

**Dr. King's credentials**

19. Dr. King participated in Ascension's Employee Tuition Reimbursement Program in 2022, 2023, and 2024, earning her Doctorate on May 11, 2024.

20. Dr. King was the only Black Lead Licensed Behavioral Health Counselor in Ascension's Milwaukee and Racine, Wisconsin facilities.

21. Dr. King was the only Licensed Behavioral Health Professional in Ascension's Milwaukee and Racine, Wisconsin facilities to hold three licenses issued by the State of Wisconsin Department of Safety & Professional Services: Independent Clinical Supervisor #15569-135, Clinical Substance Abuse Counselor #15703-132, and Social Worker #5140-120.

**Dr. King's accolades**

22. Throughout her tenure with Ascension – St. Francis, Dr. King received commendations from managers for her work with hospital patients.

23. On September 24, 2024, Dr. King received a commendation from Shana McClone, Chief Nursing Executive, for her, "active participation in Interdisciplinary Rounds … I appreciate your desire to offer such an important service to our patients while sharing knowledge with the team. It is noted."

24. On January 22, 2025, Ashley Witt, Manager of Case Management Services, emailed Dr. King, "I received great feedback that our numbers look good for the county for the housing Programs, and I said it is likely all do to you!"

25. On February 12, 2025, Dr. King received a commendation for going, "above and beyond to help find housing, resources, and support for all of your patients. You are also a wealth of AODA information to the Inpatient Case Management Team. We value you and your expertise. You also do everything with a smile."

26. Throughout her employment with Ascension, Dr. King had perfect attendance and no unplanned absences.

27. In 2022, 2023, and 2024, Dr. King received excellent performance reviews and received the highest performance raise that an employee could earn.

28. Dr. King volunteered her time to work as a Sitter when the hospital did not have anyone to monitor patients in Intensive Care, Mental Health & Addiction, and the Medical/Surgical Units.

29. In her position, Dr. King was consulted by Ascension's medical doctors on issues involving the homeless and offender populations.

**Dr. King's race**

30. Dr. King is African American.

**Dr. King's disability**

31. Since October 2, 2013, Dr. King has been disabled by Rheumatoid Arthritis.

32. Ascension was made aware of Dr. King's disability in her employment application and pre-employment physical examination.

33. Dr. King has visible disfigurement in both of her hands.

34. As a result of her rheumatoid arthritis, Dr. King is substantially limited in one or more major life activities, including but not limited to:

a. Performing manual tasks;

b. Gripping, writing, and typing;

c. Lifting and carrying objects;

d. Walking and standing for extended periods of time;

e. Performing repetitive hand movements.

35. Dr. King experiences reduced grip strength, joint swelling, stiffness and pain, particularly in her hands, which limits her ability to perform fine manipulation and repetitive movements.

36. Dr. King utilized an ergonomic mouse and keyboard, footrest, ergonomic pen, and gel cushion for her chair in her office at Ascension.

37. Dr. King utilized a disabled parking placard and parked in the disabled parking while at work.

38. Dr. King's impairments are permanent and require ongoing medical treatment, including medication, injection, and physician-imposed work restrictions.

39. Ascension regarded Dr. King as having a disability and maintained a record of her impairment.

**Dr. King's request for accommodation**

40. In late December 2024, when Dr. King's arthritis symptoms had worsened, she asked her supervisor, Gaurkee, the Behavioral Health Manager, to work from home because of her disability.

41. Gaurkee inexplicably denied Dr. King's request to work from home.

42. Ascension failed to meaningfully engage in the interactive process with Dr. King when she requested an accommodation to work from home because of her disability.

43. Gaurkee allowed Dr. King's coworker, Whitney Beygona ("Beygona"), Lead Licensed Behavioral Health Counselor, a Caucasian employee, to work from home following her drunk driving conviction.

44. Gaurkee also allowed Tammy Roberts ("Roberts"), Behavioral Health Liaison, a Caucasian employee, to work from home because her family member suffered a health condition.

45. Dr. King's accommodation request remained pending through the end of her employment.

**Dr. King's FMLA application**

46. Dr. King applied for intermittent FMLA leave on January 9, 2025, because of her Rheumatoid Arthritis and because her accommodation request was denied.

47. Dr. King had worked more than 1,250 hours during the twelve months preceding January 9, 2025.

48. Dr. King required intermittent FMLA leave to attend numerous medical appointments for her Rheumatoid Arthritis, which were only available during her regular working hours.

49. Dr. King's FMLA request was approved by Ascension's FMLA administrator, Sedgwick, on January 30, 2025.

**Defendants' retaliation against Dr. King**

50. Shortly after Dr. King began exercising her FMLA rights, the Defendants' treatment of Dr. King changed for the worse.

51. Defendants had authority over scheduling, leave approval, and discipline of Dr. King.

52. Defendants had control over Dr. King's employment conditions.

53. On or about March 3, 2025, Dr. King emailed McCormick, Outpatient Behavioral Health Manager, a reminder that she had a medical appointment scheduled for March 5, 2025, which gave McCormick notice that Dr. King was taking FMLA leave.

54. On March 4, 2025, McCormick, Hosken, Human Resources, and Osteguard, Behavioral Health Manager of the Inpatient Unit, knowing that Dr. King was exercising her FMLA rights the following day, terminated Dr. King's employment, falsely claiming that Dr. King had violated HIPAA by accessing patient files.

55. When Dr. King asked for specifics of the alleged HIPAA violations, Defendants could provide no proof or examples.

56. Defendants' allegations of HIPAA violations were a pretext to terminate Dr. King for unlawful reasons.

57. Dr. King did not violate HIPAA.

58. When the State of Wisconsin Department of Workforce Development – Unemployment Insurance Division asked for specifics of the alleged HIPAA violations, Ascension could provide no proof or examples.

59. Because Dr. King's job duties required her to comply with controls when accessing patient files on a daily basis Defendants had no honest or reasonable belief that Dr. King violated HIPPA.

60. If Defendants had an honest belief that Dr. King had committed a violation, they would have identified patient names, dates, chart accesses, disclosures, or specific conduct, but they did not.

61. If Defendants had an honest belief that Dr. King had committed a violation, audit findings would have existed, but they did not.

62. If Defendants had an honest belief that Dr. King had committed a violation, HIPAA investigation findings would have been provided, but were not.

63. Dr. King's termination prevented her from exercising her right to approved intermittent FMLA leave.

64. Defendants terminated Dr. King to avoid her future FMLA absences related to Rheumatoid Arthritis.

65. Dr. King lost approved future leave benefits because of the termination.

**Defendants' favorable treatment of Dr. King's comparators**

66. In 2023, Licensed Behavioral Health Counselor, Patrick Schultz ("Schultz"), brought a loaded firearm to work and had it in his office desk drawer.

67. Schultz's violation of Ascension's work rules by bringing his loaded firearm into Ascension's building mandated the termination of his employment.

68. Instead of termination for his work rule violation, Schultz, a non-disabled Caucasian employee who had not exercised FMLA rights, was promoted to Lead Licensed Behavioral Health Counselor, and then promoted to Licensed Behavioral Health Supervisor.

69. Erin Shannon ("Shannon"), a non-disabled Caucasian employee who had not exercised FMLA rights, is a Licensed Behavioral Health Counselor at Ascension – St. Francis Hospital.

70. Shannon routinely called in sick without recording her absences in KRONOS in violation of Ascension's work rules.

71. Ascension's work rules mandate termination of employment for time theft.

72. Management was aware of Shannon's time theft and took no disciplinary action against her.

73. Schultz, McCormick, and Shannon were supervised by Gaurkee, were subject to the same standards and work rules, and had engaged in conduct warranting termination without such differentiating or mitigating circumstances as would distinguish their conduct or Ascension's treatment of them, from Ascension's allegation against Dr. King or treatment of Dr. King.

74. Ascension's company policies are applied by HR and management in a discriminatory manner, as employees similarly situated to Dr. King who are not African American, disabled or exercising FMLA rights, are neither disciplined, nor terminated when they commit serious work rule violations.

75. Similarly situated employees who are not African American, disabled or exercising FMLA rights, were not terminated by Ascension based on unsupported accusations.

76. Ascension's discrimination against Dr. King and interference with her legal rights caused her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**FIRST COUNT**
**AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION BY DEFENDANT ASCENSION**

77. As and for a first Count, Dr. King re-asserts the allegations recited above at ¶¶1-9, 21-29, 31-76 and fully incorporates those paragraphs herein by reference.

78. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Ascension routinely targeted and treated Dr. King less favorably than comparably situated, non-disabled employees, which led to the termination of Dr. King's employment, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**SECOND COUNT**
**AMERICANS WITH DISABILITIES ACT**
**RETALIATION BY DEFENDANT ASCENSION**

79. As and for a second Count, Dr. King re-asserts the allegations recited above at ¶¶1-9, 21-29, 31-76 and fully incorporates those paragraphs herein by reference.

80. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Ascension targeted Dr. King for engaging in protected activity related to her disability, which led to the termination of Dr. King's employment, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**THIRD COUNT**
**AMERICANS WITH DISABILITIES ACT**
**FAILURE TO ACCOMMODATE BY DEFENDANT ASCENSION**

81. As and for a third Count, Dr. King re-asserts the allegations recited above at ¶¶1-9, 21-29, 31-76 and fully incorporates those paragraphs herein by reference.

82. The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Dr. King is a qualified individual with a disability; Ascension was aware of Dr. King's disability; and Ascension failed to reasonably accommodate Dr. King's disability, causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**FOURTH COUNT**
**TITLE VII, CIVIL RIGHTS ACT OF 1964**
**RACE DISCRIMINATION BY DEFENDANT ASCENSION**

83. As and for a fourth Count, Dr. King re-asserts the allegations recited above at ¶¶1-30, 50-62, 66-76 and fully incorporates those paragraphs herein by reference.

84. The allegations more particularly described above constituted race discrimination against Dr. King by Ascension, with malice or with reckless indifference to the federally protected rights of Dr. King, in violation of Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, [42 U.S.C. § 2000e-2(a)(1)], causing her to suffer losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**FIFTH COUNT**
**FMLA INTERFERENCE § 2615(A)(1) BY ALL DEFENDANTS**

85. As and for a fifth Count, Dr. King re-asserts the allegations recited above at ¶¶1-9, 21-29, 31-76 and fully incorporates those paragraphs herein by reference.

86. Defendants deprived Dr. King of FMLA entitlement in violation of 29 U.S.C. § 2615(a)(1) on the basis that she was eligible for the FMLA's protections, Ascension was covered by the FMLA, Dr. King was entitled to leave under the FMLA, she provided sufficient notice of her intent to take FMLA leave, and Defendants denied her FMLA benefits to which she was entitled.

87. The allegations more particularly described above regarding the intentional discriminatory practices of Defendants were not made with good faith or reasonable grounds for believing that the conduct did not violate the FMLA.

88. The allegations more particularly described above caused Dr. King wage loss, benefits loss, and expenses, all to her damage.

**SIXTH COUNT**
**FMLA RETALIATION § 2615(a)(2) BY ALL DEFENDANTS**

89. As and for a sixth Count, Dr. King re-asserts the allegations recited above at ¶¶1-9, 21-29, 31-76 and fully incorporates those paragraphs herein by reference.

90. Defendants violated 29 U.S.C. § 2615(a)(2) by taking the materially adverse action of terminating Dr. King's employment because of FMLA-protected activity.

91. The allegations more particularly described above regarding the intentional discriminatory practices of Defendants were not made with good faith or reasonable grounds for believing that the conduct did not violate the FMLA.

92. The allegations more particularly described above caused Dr. King wage loss, benefits loss, and expenses, all to her damage.

WHEREFORE Plaintiff, Dr. Veronica King, demands that judgment be entered and Defendants ordered to provide the following remedies:

A. Damages equal to the amount of wages, employment benefits, and other compensation denied or lost by reason of the FMLA violation pursuant to 29 U.S.C. § 2617;

B. The interest on said damages calculated at the prevailing rate pursuant to 29 U.S.C. § 2617;

C. Equitable relief as may be appropriate, including employment, reinstatement, and promotion pursuant to 29 U.S.C. § 2617;

D. A reasonable attorney's fee pursuant to 29 U.S.C. § 2617;

E. Reasonable expert witness fees pursuant to 29 U.S.C. § 2617;

F. Costs of the action pursuant to 29 U.S.C. § 2617;

G. An additional amount as liquidated damages equal to the sum of damages and interest pursuant to 29 U.S.C. § 2617;

H. Reinstatement and back pay pursuant to 42 U.S.C. § 2000e-5(g);

I. Compensatory and punitive damages pursuant to 42 U.S.C. § 1981a;

J. Attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and

K. Such other relief as the Court deems just and equitable.

Dated this 8th day of May, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, SBN: 1008953
Nicholas O. Yurk, SBN: 1095278
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI 53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@EmployeeAdvocates.com